**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| W.R. and her son, A.R., by and through his mother, W.R.; | ) | |
| | ) | |
| Plaintiffs | ) | |
| v. | ) | |
| JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States; | ) ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY ("DHS"); KIRSTJEN | ) ) | Civil Action No. 18-cv-11380 |
| NIELSEN, Secretary of DHS; U.S. IMMIGRATION AND CUSTOMS | ) ) | **Leave to File Granted on July 9th, 2018** |
| ENFORCEMENT ("ICE"); THOMAS HOMAN, Acting Director of ICE; | ) ) | |
| PATRICK CONTRERAS, Director, ICE Field Office for Enforcement Removal | ) ) | **SUPPLEMENTAL AFFIDAVIT OF W.R. IN SUPPORT OF MOTION** |
| Operations in Houston, Texas; U.S. CUSTOMS AND BORDER | ) ) | **FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY** |
| PROTECTION ("CBP"); KEVIN K. MCALEENAN, Acting Commissioner of | ) ) | **INJUNCTION** |
| CBP; U.S. CITIZENSHIP AND IMMIGRATION SERVICES ("USCIS"); | ) ) | |
| L. FRANCIS CISSNA, Director of USCIS; U.S. DEPARTMENT OF HEALTH AND | ) ) | |
| HUMAN SERVICES ("HHS"); ALEX AZAR, Secretary of the Department of | ) ) | |
| Health and Human Services; OFFICE OF REFUGEE RESETTLEMENT ("ORR"); | ) ) | |
| SCOTT LLOYD, Director of the Office of Refugee Resettlement; BCFS; KEVIN | ) ) | |
| DINNIN, President and CEO of BCFS; and PEDRO MARTINEZ, Administrator on | ) ) | |
| Duty BCFS Baytown. | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**SUPPLEMENTAL AFFIDAVIT OF W.R. IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

1. On June 29, 2018, I submitted an affidavit in support of my Motion for Temporary Restraining Order and Preliminary Injunction.

2. Since that time, I have received new information about my son's health and the harm he is suffering.

3. At approximately 8:40pm on July 2, I received a phone call from my son. As was the case with prior phone calls, his conversation was monitored.

4. A.R. was very upset and was crying. He sounded desperate. A.R. told me that he "could not take it anymore," that he cannot stand being away from me because it is "too hard being [t]here." He begged me: "Mamaezinha [Mommy] please come get me." A.R. said that he misses me, misses the food that I cook for him, and misses my hugs. He told me that he has no friends there and that there is no one who speaks his language (Portuguese).

5. I told A.R. not to worry. I told him that I am doing everything in my power to get him back, that I have filled out all the paperwork, and that I love him very much. In response, he said that he is praying to God to help me get all the papers I need so I can come get him, because he "cannot wait any longer."

6. I told him to "hold on just for a few more days" and that we will be together again "soon." I said this to try to comfort my son who was crying and afraid, but in truth I do not have a date by which I can pick up my son. The government has not given me a decision regarding when they will release my son.

7. A.R. then told me that he was hungry. He explained that for dinner he was given a cup of water with something spicy in it, which he did not recognize. He told me

that this cup was the only thing he had been given to eat, but that he did not want to eat it because he did not know what it was.  He said he had asked for something else, but had been told that he could not have anything else and that the next meal was not until 9:30 AM the next morning, which would be a piece of bread and a glass of orange juice.

8.  Almost immediately after A.R. told me he was hungry, the person monitoring his conversation told him to hang up the phone.  In its entirety, this call lasted approximately three minutes.

9.  On the morning of July 5, I received a phone call from a BCFS case worker at my son's facility.  The case worker informed me that some time during the next 15 days, they would send someone to my home to inspect my home.  The case worker said that after the home inspection was complete, I would have to wait at least ten *additional* days for a decision on whether my son would be released to me.  This means it may be another 25 days, if not more, until I even get a decision about my son.

10. Though I have talked to BCFS case workers repeatedly to get information about my son, about the paperwork I needed to fill out, and about the process in general, this is the first time anyone has ever told me about a home inspection.

11. When I learned of this new requirement I was devastated.  It feels like the rules about what I have to do to get my son back are constantly changing.  I do not believe that I can trust what the case worker tells me, because they continue to come up with new reasons that I cannot be reunited with my son.

12. On the afternoon of July 5, myself and my two adult family members went for a
    fingerprinting appointment, which I had previously been told would be necessary
    before my son could be reunited with me.  Originally, I was told the earliest
    available appointment was July 12, 2018.  This earlier fingerprinting appointment
    on July 5 was obtained through the assistance of my counsel and the assistance of
    elected officials who made phone calls on my behalf.  The government and the
    case worker at my son's facility did not do anything to help expedite this
    appointment.

13. I am very concerned for my son's safety, for his physical health, and for his
    psychological health.  My son is hungry, alone, and afraid that he will never see
    me again.  I worry also because he is isolated does not have anyone there who
    understands his culture or speaks his language.  I am very concerned about the
    long-term effect that this experience will have on him.

14. I am also suffering.  I worry about my son all the time.  I cannot eat, I cannot
    sleep, and I am upset every moment of every day.  I am doing my best to follow
    all the rules to get my son back, but just when I think I have completed all the
    steps, there is a new obstacle.

15. I thought that my heart was already broken when my son was taken from me.  I
    did not know that it was possible for my heart to break more, but it did when I
    heard A.R on the phone telling me that he was hungry and that he could not wait
    any longer.  He sounded very traumatized, and I cannot adequately describe the
    pain I feel being thousands of miles from him and unable to help him.

16. I am asking this Court to let him come home as soon as possible, and to please

    end this pain and suffering for us both.

Signed under pains and penalty of perjury, this 6th day of July, 2018.

I, Maria Lucia C. de Mayrinck certify that I am a disinterested adult competent to interpret from English to Portuguese and that I interpreted the above-referenced document from English to Portuguese for the above-referenced affiant.

Signed under pains and penalties for perjury, this 6th day of July, 2018.